IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **ECLIPSE RESOURCES-OHIO, LLC,** *et al.*, : | |
| : | **Case No. 15-CV-177** |
| Plaintiffs/Counter-Defendants, : | |
| : | **JUDGE ALGENON L. MARBLEY** |
| v. : | |
| : | **Magistrate Judge Kemp** |
| **SCOTT A. MADZIA,** : | |
| : | |
| Defendant/Counter-Claimant.  : | |

**OPINION & ORDER**

Before the Court are seven motions: (1) Plaintiffs/Counter-Defendants Eclipse Resources-Ohio, LLC's and Eclipse Resources I, LP's (collectively, "Eclipse") Sealed Motion for Partial Summary Judgment (Doc. 76); (2) Counter-Defendant XTO Energy, Inc.'s ("XTO") Motion for Judgment on the Pleadings (Doc. 88); (3) Defendant/Counter-Claimant Scott A. Madzia's Motion for Judgment on the Pleadings on Count II of the Amended Complaint (Doc. 89); (4) Madzia's Motion for Leave to File Second Amended Counterclaim (Doc. 92); (5) Eclipse's Second Motion to Compel (Doc. 94); (6) Eclipse's Motion for Hearing re Scheduling Order (Doc. 102); (7) Eclipse's Motion for Hearing re Motion for Leave to File Second Amended Counterclaim (Doc. 103); and (8) Eclipse's Motion for Order Scheduling Status Conference. This Opinion and Order discusses only Madzia's Motion for Leave to File a Second Amended Counterclaim (Doc. 92). For the reasons that follow, the Court **GRANTS** the Motion. The Court **GRANTS** Eclipse's Motion for Order Scheduling Status Conference (Doc. 106). The Court **DENIES** all other motions as **MOOT**.

1

## I. BACKGROUND

Madzia is the titled owner of three parcels of real property in Stock Township, Harrison County, Ohio (the "Property"). (Compl., Doc. 1, ¶ 4.) Eclipse Resources I, LP is a Delaware limited partnership whose principal place of business is in Pennsylvania (Second Am. Countercl., Doc. 92-1, ¶ 7); Eclipse Resources–Ohio LLC is a Delaware limited liability company whose principal place of business is also in Pennsylvania (*id.*, ¶ 8); and XTO is a Delaware corporation whose principal place of business is in Texas (*id.*, ¶ 9). Eclipse and XTO exploit land to extract energy sources.

This case concerns the rights and responsibilities of the parties to an oil and gas lease (the "Lease"), an amendment to the lease (the "Amendment"), and a subsurface easement (the "Easement"). The case was reassigned to this Court from the Hon. Judge Gregory Frost upon his retirement. On March 2, 2016, the Court issued an Opinion and Order (the "March Order") (Doc. 84) dismissing several of Madzia's Amended Counterclaims (Doc. 26). The March Order set forth the facts of the case thoroughly, and they need not be repeated. (Doc. 84 at 2-11.)

Pertinent to the matter before the Court is the part of the March Order concerning an affidavit Eclipse submitted to the Ohio Department of Natural Resources ("ODNR") to bypass ODNR's permitting process for approval to drill wells on the Property. (Doc. 84 at 8; Answer, Doc. 8, ¶ 6.) In April of 2014, Madzia entered into the Easement with Eclipse to allow Eclipse to drill and develop wells (the "Madzia Wells") on a certain property (the "Madzia Property"). (Doc. 8 at 12.) Madzia had executed an affidavit stating that he owned the coal rights on the Madzia Property (the "Affidavit" or "Madzia Affidavit"), and that he did not object to Eclipse drilling the Madzia Wells. (Doc. 84 at 8.) In May of 2014, Eclipse sought another easement to drill new wells (the "John Mills Wells") on a different property that Madzia owned (the "John

Mills Property"). (Doc. 8 at 13.) Madzia rejected Eclipse's offer. (*Id.*) Madzia alleges that Eclipse then submitted to ODNR the Affidavit he signed for the Madzia Wells to gain approval to drill the John Mills Wells. (Doc. 84 at 8.) Madzia asserts that the Affidavit allowed Eclipse to drill only the Madzia Wells. (*Id.*) (citing Am. Countercl., Doc. 25, ¶ 33).

For background, Ohio Revised Code § 1509.08 sets forth a procedure for obtaining permission from ODNR to drill an oil and gas well located in a coal bearing township.[1] It provides, in relevant part:

> Upon receipt of an application for a permit required by section 1509.05 of the Revised Code, or upon receipt of an application for a permit to plug and abandon under section 1509.13 of the Revised Code, the chief of the division of oil and gas resources management shall determine whether the well is or is to be located in a coal bearing township.
>
> Whether or not the well is or is to be located in a coal bearing township, the chief, by order, may refuse to issue a permit required by section 1509.05 of the Revised Code to any applicant who at the time of applying for the permit is in material or substantial violation of this chapter or rules adopted or orders issued under it. The chief shall refuse to issue a permit to any applicant who at the time of applying for the permit has been found liable by a final nonappealable order of a court of competent jurisdiction for damage to streets, roads, highways, bridges, culverts, or drainways pursuant to section 4513.34 or 5577.12 of the Revised Code until the applicant provides the chief with evidence of compliance with the order. No applicant shall attempt to circumvent this provision by applying for a permit under a different name or business organization name, by transferring responsibility to another person or entity, by abandoning the well or lease, or by any other similar act.
>
> If the well is not or is not to be located in a coal bearing township, or if it is to be located in a coal bearing township, but the landowner submits an affidavit attesting to ownership of the property in fee simple, including the coal, and has no objection to the well, the chief shall issue the permit.

---

[1] The Court takes judicial notice of the non-controversial, publicly-available fact, *see United States v. Harris*, 331 F.2d 600, 601 (6th Cir. 1964) (per curiam), that, as of June 15, 2016, Ohio represents that all municipalities within Harrison County are coal bearing. Designated Coal Bearing Areas: Counties in Mining Area, *available at* https://oilandgas.ohiodnr.gov/portals/oilgas/pdf/designated_coal_bearing_areas.pdf (last seen June 15, 2016).

3

Ohio Rev. Code § 1509.08. This procedure allows an affected coal owner to object to another entity's application to drill a proposed well. If the owner objects, "and if in the opinion of the chief the objection is well founded, the chief shall disapprove the application and immediately return it to [ODNR] together with the reasons for disapproval and a suggestion for a new location for the well." *Id.* The applicant can bypass this process by submitting an affidavit from the landowner stating that he or she does not object to the proposed well. *See id.*

Madzia's First Amended Counterclaim alleged that Eclipse's use of the Madzia Property Affidavit constituted breach of the Lease, Amendment, and Easement (Counts III and IV), breach of the covenant of good faith and fair dealing of those three agreements (Count V), and fraud and slander of Madzia's title to the Property (Counts VIII and IX, respectively). (Doc. 8 at 16-22.) In its March Order, the Court dismissed all of Madzia's counterclaims concerning Eclipse's use of the Madzia Affidavit because Madzia had not alleged that the use of the Affidavit *caused* ODNR to approve Eclipse's application to drill on the John Mills Property, and because Madzia had not alleged that, had Eclipse applied for a permit instead of submitting the Affidavit, ODNR would have considered Madzia's objection "well founded" so as to deny the application. (*Id.* at 25.) The Order elaborated as to the latter:

> The language and structure of the statute suggests that the coal owner's objection must relate to the well's impact on his or her coal rights such that ODNR would find the objection "well founded" and suggest a new location for the well. Nothing about the statute suggests that it is intended to resolve contractual disputes between a landowner and an oil and gas company regarding the latter's contractual right to drill.

(*Id.* at 24.) The Court also found that Eclipse's use of the Madzia Affidavit to drill the John Mills Wells, although not adhering to the mandate of the statute, was nonetheless not an affirmative violation of it. (*Id.* at 25.) This finding is relevant because Eclipse agreed in both the Amendment and the Easement to comply with all applicable laws and regulations relative to its operations on

4

the Property. *See* Amendment, Def.'s Ex. C, Doc. 8-3, ¶ 7 (PAGEID # 3-4) ("Compliance with Laws: The following provision is hereby added to and made a part of the . . . Lease:. . . . Lessee shall at all times comply with all applicable federal, state and local laws and regulations relative to its operations conducted on the Leased Premises."); Easement, Def.'s Ex. E, Doc. 8-5, ¶ 7 (PAGEID # 94) ("Grantee, at its sole cost and expense, shall comply at all times with all applicable federal, state and local laws, rules, regulations and safety standards in connection with Grantee's activities hereunder.").

## II. STANDARD

Under Federal Rule of Civil Procedure 15(a)(2), a court must freely give a movant leave to amend a pleading "when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded."). Although a plaintiff should generally have the opportunity to test her claim on the merits, a motion for leave to amend a pleading may nevertheless be denied due to a movant's undue delay or bad faith, a movant's repeated failure to cure previous deficiencies, undue prejudice to the opposing party by allowing the amendment, or the futility of amendment. *Id.* A decision to grant leave to amend is within the sound discretion of the district court. *Wallace Hardware Co., Inc. v. Abrams*, 223 F.3d 382, 410 (6th Cir. 2000); *Fisher v. Roberts*, 125 F.3d 974, 977 (6th Cir. 1997).

## III. ANALYSIS

Madzia contends that newly discovered evidence warrants leave for him to file a second amended counterclaim. Eclipse opposes Madzia's position on the grounds of futility and prejudice. The Court will address each of Eclipse's arguments in turn.

### A. Futility

Under a law-of-the-case theory, Eclipse contends that allowing Madzia to amend his counterclaim would be futile because the March Order finding that Eclipse's submission of the Madzia Affidavit did not constitute a violation of § 1509.08 of the Revised Code is fatal to any claim whose merit rests on such a violation. The law-of-the-case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983) (dictum)). But application of the doctrine is not absolute, and the Court may "depart from a prior holding if convinced that it is clearly erroneous and would work a manifest injustice." *Arizona v. California*, 460 U.S. at 618 n.8. The Court is so convinced, because the prior ruling was based on an incomplete record and, if allowed to stand, would result in manifest injustice.

In its March Order, the Court erroneously found that Eclipse's submission of the Madzia Affidavit to drill the John Mills Wells did not violate § 1509.08 of the Revised Code. In reaching its decision, the Court had nothing to rely on but logic, common sense, and the text of the statute. (Doc. 84 at 24-25 ("If, as in this case, the entity submits an affidavit expressing the landowner's consent to build a different well, then the statute has not been satisfied and the language requiring ODNR to issue the permit does not apply. It does not logically follow that an entity that submits such an affidavit has affirmatively violated the statute.")). Since then, discovery has disclosed substantial material evidence contradicting the Court's finding.

First is deposition testimony from ODNR permitting manager Steve Opritza. Parties deposed Opritza on February 26, 2016, just a few days before the Court entered the March Order. (Mot. for Leave to File Second Am. Countercl., Doc. 92 at 5.) Opritza testified that, at the

6

time Eclipse submitted the Madzia Affidavit to drill the John Mills Wells, he would have withheld the permit. (Opritza Depo., Def.'s Ex. 2, Doc. 92-1 at 45, PAGEID # 2442) ("We relied on the application as submitted assuming that it was proper. Turns out it wasn't. Had we known at the time, we would not have issued those permits."). Opritza testified further that Eclipse submitting the Madzia Affidavit to drill the John Mills Wells was "inconsistent with the way the statute reads and [ODNR's] interpretation of it," (Opritza Depo., Def.'s Ex. 2 Doc. 92-1 at 42, PAGEID # 2439), and he agreed with the proposition that Eclipse did "not comply with ODNR's permitting rules and requirements." (*Id.* at 43, PAGEID # 2440.) Eclipse points to portions of Opritza's deposition in which he suggests that what Eclipse did was proper. *See, e.g.*, Pls.' Ex. G, Doc. 96-7 at 2, PAGEID # 2507 (agreeing with the proposition that "Eclipse [had] the right to rely upon the issuance of permits for the John Mills [Wells]" "based upon the policies that existed within ODNR at the time"); Def.'s Ex. B, Doc. 96-2 at 2, PAGEID # 2500 (agreeing that ODNR's policy changed when Madzia sent a December 11, 2015 objection letter, *after* the time when Eclipse submitted the Madzia Affidavit). Opritza's deposition testimony thus leaves some doubt as to whether Eclipse violated § 1509.08. The following evidence, however, extinguishes all doubt.

On March 4, 2016, Richard Summer, Chief of the Division of Oil and Gas Resources Management at ODNR (the "Chief") issued two suspension orders for the John Mills Wells (the "Suspension Orders") that each made two findings: (1) that Eclipse "did not provide the Oil and Gas Affidavit for the John Mills . . . [W]ell[s] in accordance with the requirements of R.C. 1509.06(D) and 1509.08"; and (2) that "Eclipse is not operating the John Mills . . . [W]ell[s] in accordance with the requirements of R.C. 1509.06(D) and 1509.08." (Proposed Am. Countercl.,

7

Def.'s Ex. E, Doc. 92-1 at 36, PAGEID # 2433; *id.*, Def.'s Ex. F, Doc. 92-1 at 39, PAGEID # 2436.)

And a proposed compliance agreement drafted by ODNR in March (the "Compliance Agreement") states, among other things, that:

> 11. Eclipse violated R.C. 1509.08 by failing to submit a proper coal rights affidavit for [the John Mills Wells]. . . .
>
> 13. Eclipse violated R.C. 1509.06(D) by failing to submit the required coal rights affidavit with its request for expedited review of the applications for [the John Mills Wells].

(Def.'s Reply Memo., Ex. A, Doc. 101-1 at 4-5, PAGEID # 2870-71.) The Compliance Agreement also includes conditions, namely that "Eclipse shall not produce any oil, gas, or other substance from the John Mills . . . [W]ell[s] unless and until Eclipse submits a coal rights affidavit for [the Wells] as required by R.C. § 1509.06(D) and 1509.08, or until Eclipse provides an order of a court of competent jurisdiction finding that Eclipse has the necessary rights." (*Id.* at 5, PAGEID # 2871.)

So the Court issued the March Order unaware that the permitting manager for ODNR believed that Eclipse was out of compliance with the law, unaware that ODNR found that Eclipse was not operating the John Mills Wells in accordance with the requirements of the Revised Code, and unaware that ODNR found that Eclipse violated the Code by failing to furnish the correct affidavit in its application for the John Mills Wells.

In matters of statutory interpretation, the Court is obligated to defer to the findings of the relevant state agency. *Smith v. Babcock*, 19 F.3d 257, 260 (6th Cir. 1994) ("[W]e must frankly acknowledge what should be obvious: courts are not administrative agencies, and judges are not administrators."); *Weiss v. Pub. Util. Comm'n*, 734 N.E.2d 775 (Ohio 2000) (deferring to state agency interpretation of the Revised Code). As such, the Court must "adhere to the 'venerable

8

principle that the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong.'" *Id.* at 260-61 (quoting *Red Lion Broadcasting Co., Inc. v. F.C.C.*, 395 U.S. 367, 381 (1969)). Here, the Court finds no persuasive reason to substitute its interpretation of the Revised Code for the judgment and expertise of ODNR, the state agency tasked with enforcing the statutory language at issue where, as here, the Court's prior finding that Eclipse had not violated § 1509.08 was based on an incomplete, if not misleading, record.

The Court now turns to whether not vacating its prior finding would work a manifest injustice. Eclipse agreed in both the Amendment and the Easement to comply at all times with "all applicable federal, state and local laws." (Amendment, Def.'s Ex. C, Doc. 8-3, ¶ 7 (PAGEID # 3-4); Easement, Def.'s Ex. E, Doc. 8-5, ¶ 7 (PAGEID # 94).) After entering into those agreements, Eclipse violated applicable state law, even though Madzia bargained with Eclipse for, among other things, the assurance that it would not do so.

In Madzia's proposed Second Amended Counterclaim, he alleges that: (1) Eclipse and Madzia were parties to valid contracts with specified terms (Doc. 92-1, ¶¶ 11-12, 14); (2) Madzia has fully performed his obligations under the contracts (*id.*, ¶ 36); (3) Eclipse failed to perform its obligations under the contracts by violating Ohio law when it submitted the Madzia Affidavit to drill the John Mills Wells (*id.*, ¶ 41); and (4) Eclipse's violation of Ohio law caused damage to Madzia (*id.*, ¶ 42), which means that Madzia has alleged valid causes of action for breach of contract. *See Samadder v. DMF of Ohio, Inc.*, 154 Ohio App.3d 770, 778 (2003) (citation omitted).

Leaving undisturbed the Court's prior finding that Eclipse did not violate Ohio law would deny Madzia the opportunity to test the merits of his well-pleaded breach-of-contract claims. The

Court will not deny him that opportunity. It is axiomatic that courts ought to settle contract disputes. Indeed, the very existence of courts of law is owed in no small part to their ability and authority to vindicate the rights of parties to contracts. *See, e.g.*, <u>Tractatus de legibus et consuetudinibus regni Angliae</u>, [Treatise on the Laws and Customs of the Kingdom of England], commonly attributed to Ranulf de Glanvill, No. X, Chapter 6 (ca. 1188) ("si fuerit debitor in morā solvendi debitum, poterit creditor se inde conqueri, et justiciabitur debitor ut ad Curiam veniat et inde respondeat. . ." ["if a debtor delay in paying debt, the creditor can complain, and the debtor will be compelled to come to the Court and answer in person . . ."]).

### B. Prejudice

Eclipse argues that granting Madzia leave to file a second amended counterclaim would result in prejudice to Eclipse because Madzia is raising new claims as a result of his own undue delay in discovery. (Doc. 96 at 11-12.) Eclipse cites *Parish v. Frazier*, 195 F.3d 761 (5th Cir. 1999), to argue that the Court should scrutinize more closely attempts to expand litigation through amendment after the party opposing amendment has moved for summary judgment. 195 F.3d at 764. This is true but unpersuasive. Madzia alleged that Eclipse's submission of the Coal Affidavit to ODNR to drill the John Mills Wells was a breach of the contract in his very first counterclaim. (Doc. 8, ¶¶ 24, 47, 53, etc.), so a second amended counterclaim would not be introducing anything novel; rather, reviving the same claims the Court previously dismissed. And although the new information has come to light late in discovery, the Court cannot fairly characterize Madzia's behavior as dilatory. He has complied with deadlines thus far. Further, the March 4, 2016 Compliance Agreement alone would convince the Court to vacate its prior finding that Eclipse did not violate § 1509.08, and the Court questions why Eclipse did not disclose the Agreement to Madzia until April 14, 2016 even though Madzia asked for ODNR-

10

related documents early in the case. (Doc. 101 at 6.) In any event, the Court appreciates that Eclipse will need time for more discovery, and to prevent prejudice to Eclipse, the Court hereby **VACATES** all discovery and trial-related deadlines.

### III. CONCLUSION

The Court **VACATES** its prior finding that Eclipse did not violate Ohio Revised Code § 1509.08, and it **GRANTS** Madzia's Motion for Leave to File a Second Amended Counterclaim (Doc. 92). The Court **VACATES** all discovery and trial-related deadlines. The Court **DENIES** Docs. 76, 88, 89, 94, 102, and 103 as **MOOT**. The Court **GRANTS** Eclipse's Motion for Order Scheduling Status Conference (Doc. 106).

This case is set for a Telephonic Status Conference on **Thursday, July 14, 2016,** beginning at **3:00 p.m.** During the Telephonic Status Conference, the Court will address scheduling matters, along with any issues necessary for a speedy and just resolution of the pending action. The conference is not expected to exceed thirty minutes in length.

**IT IS SO ORDERED.**

                                             *s/ Algenon L. Marbley*
                                             **ALGENON L. MARBLEY**
                                             **UNITED STATES DISTRICT JUDGE**

**DATED: July 5, 2016**